2004 ME 40

**Taryn SAGER**

v.

**TOWN OF BOWDOINHAM.**

Supreme Judicial Court of Maine.

Argued: Feb. 12, 2004.

Decided: March 26, 2004.

Chet M. Randall (orally), Thomas H. Kelley, Pine Tree Legal Assistance, Inc., Portland, for plaintiff.

Roger R. Therriault, Bath, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, and ALEXANDER, JJ.*

ALEXANDER, J.

[¶ 1] Taryn Sager appeals from a judgment of the Superior Court (Sagadahoc County, *Crowley, J.*) affirming a decision of the Sagadahoc County Commissioners denying Sager's request for a complete abatement of her property taxes. Sager argues that the County Commissioners erred by applying a per se rule to reduce her property tax abatement by the amount she had received as a rebate from the Maine Residents Property Tax Program. Finding no error in the decision of the County Commissioners, we affirm.

I. CASE HISTORY

[¶ 2] Taryn Sager resides on property she owns in Bowdoinham. For the tax year 2001–2002, the real estate tax assessment on Sager's property was $1116.99. After receiving her tax bill, Sager filed a claim authorized by the Maine Residents Property Tax Program, 36 M.R.S.A. §§ 6201–6220 (1990 & Supp.2003). Sager received a payment of $316.99 from that program.

[¶ 3] Sager also applied to the Town of Bowdoinham for an abatement of her taxes pursuant to 36 M.R.S.A. § 841(2) (1990) which authorizes municipalities to abate some or all of the real and personal taxes of "persons who, by reason of infirmity or poverty, are in their judgment unable to contribute to the public charges." There is no dispute that Sager's income is very limited and that she qualified for the payment under the Maine Residents Property Tax Program and an abatement pursuant to section 841(2).

[¶ 4] The selectmen reviewed Sager's abatement request and granted her a partial abatement in the amount of $800. This sum, combined with the $316.99 paid to Sager under the Maine Residents Property Tax Program, equaled the $1116.99 assessment of Sager's property for the tax year 2001–2002. In support of their decision to limit the abatement to $800, the selectmen stated that "[t]he selectman felt it was fair and reasonable to subtract the state property tax rebate from the amount of taxes owed."

[¶ 5] As authorized by 36 M.R.S.A. § 844(1) (Supp.2003), Sager appealed the

---

* Justice Levy sat at oral argument but did not participate in the development of this opinion.

Town's decision to the Sagadahoc County Commissioners. Appeals of municipal tax abatement decisions are entitled to a new hearing and de novo consideration by the County Commissioners. *Town of Steuben v. Lipski,* 602 A.2d 1171, 1172 (Me.1992). The parties presented the matter to the County Commissioners on an agreed record with the question for the County Commissioners being "whether the Selectmen were correct in deducting the amount of Ms. Sager's state property tax rebate from the poverty tax abatement." After hearing, the County Commissioners denied Sager's request for an additional abatement of the $316.99. The County Commissioners' order stated, in part: "The Commissioners recognized that there is no obligation in the law to apply the property tax rebate to the payment of taxes. However, the Commissioners believe it is fair and reasonable to apply the tax rebate to the property tax obligation."

[¶ 6] Sager then appealed to the Superior Court pursuant to M.R. Civ. P. 80B. Following affirmance of the County Commissioners' decision by the Superior Court, Sager brought this appeal to us.

[¶ 7] Where the Superior Court acts as an intermediate appellate court in an appeal of a decision of a state or local administrative agency, we review directly the decision of the state or local administrative agency. *Yates v. Town of Southwest Harbor,* 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171; *Lipski,* 602 A.2d at 1172. Here, because the County Commissioners had de novo review authority over the appeal of the municipal abatement decision, we review directly the decision of the County Commissioners. *Id.*

## II. LEGAL ANALYSIS

[¶ 8] Sager contends that the County Commissioners erred in adopting a per se rule that the poverty property tax

abatement authorized by 36 M.R.S.A. § 841(2) must be reduced by any payments received from the Maine Residents Property Tax Program. On review, it does not appear that the County Commissioners applied the law in such an absolute fashion.

[¶ 9] The Maine Residents Property Tax Program provides that "[b]enefits received under this chapter ... may be considered for purposes of determining eligibility for abatement under section 841, subsection (2)." 36 M.R.S.A. § 6216 (1990). Thus, the law contemplates consideration, but not automatic setoff, of the benefits received in determining eligibility for the poverty abatement.

[¶ 10] Section 841(2) provides:

The municipal officers or the State Tax Assessor for the unorganized territory, within 3 years from commitment, may, on their own knowledge or on written application therefor, make such abatements as they believe reasonable on the real and personal taxes on all persons who, by reason of infirmity or poverty, are in their judgment unable to contribute to the public charges.

Section 841(2) in effect gives municipal officers considerable discretion to grant complete or partial abatements of real and/or personal taxes for poverty related reasons. The key language authorizes the municipal officials to "make such abatements as they believe reasonable." In this case, the County Commissioners, acting on appeal in the place of the municipality, determined that on the facts and the legal question presented to them "it is fair and reasonable to apply the tax rebate to the property tax obligation." This conclusion followed a sentence where the Commissioners recognized that "there is no obligation in the law to apply the property tax rebate to the payment of taxes." Thus,

the County Commissioners did not apply a per se rule—"there is no obligation in the law." Instead, in the exercise of their discretion, they determined, as authorized by both section 841(2) and section 6216, that it was "fair and reasonable" to reduce the municipal property tax abatement by the amount received from the Maine Residents Property Tax Program to cover property taxes in the same tax year.

[¶ 11] A party appealing a decision committed to the reasonable discretion of a State or local decisionmaker has the burden of demonstrating that the decisionmaker abused its discretion in reaching the decision under appeal. *See Davric Me. Corp. v. Maine Harness Racing Comm'n,* 1999 ME 99, ¶ 7, 732 A.2d 289, 293. An abuse of discretion may be found where an appellant demonstrates that the decisionmaker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law. It is not sufficient to demonstrate that, on the facts of the case, the decisionmaker could have made choices more acceptable to the appellant or even to a reviewing court. *Lipski,* 602 A.2d at 1172. Sager has not demonstrated that the County Commissioners exceeded the bounds of the reasonable choices available to them, when they determined that, in the circumstances of this case, it was "fair and reasonable to apply the tax rebate to the property tax obligation."

The entry is:

Judgment affirmed.

DANA, J., concurs and files opinion.

DANA, J., concurring.

[¶ 12] I join the result today because the Town does indeed have discretion to consider the rebate from the Maine Residents Property Tax Program, 36 M.R.S.A. §§ 6201–6220 (1990 & Supp.2003), when assessing a taxpayer's need for an abatement of taxes pursuant to 36 M.R.S.A. § 841(2) (1990). I write separately to make it clear that I do not read the Court's decision today as concluding that a town could adopt a per se rule making such deductions a matter of standard municipal procedure.[1]

---

1. The legislative history indicates that the purpose of 36 M.R.S.A. § 6216 (1990) was "to make refunds under the Maine Residents Property Tax Program a part of the *income equation* for purposes of measuring an abatement applicant's ability or inability to pay." L.D. 1858, Statement of Facts, (114th Legis. 1990) (emphasis added). While this does not preclude the kind of deduction the Town made in this case, it implies that, as a general matter, municipalities should consider the amount of a state refund when evaluating an applicant's financial need, rather than when calculating the abatement to be awarded.