STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.                 Docket Nos. PORSC-AP-17-014, -015 (consolidated)

R C'D CUMB CLERKS O
MAY 17 '18 PM1:14

NICHOLAS GLADU

Petitioner

v.

MAINE DEPARTMENT OF CORRECTIONS et als.

Respondents

## DECISION AND JUDGMENT

These consolidated Rule 80C appeals from administrative action are before the court for decision, based on parties' briefs—Petitioner Nicholas Gladu's initial and reply brief and Respondents' brief in opposition—and the entire records on appeal in each case.

The court elects to decide the cases without oral argument. *See* M.R. Civ. 80C(l) (oral argument to be scheduled "[u]nless the court otherwise directs." *See also Lindemann v. Comm'n on Governmental Ethics & Election Practices*, 2008 ME 187, ¶26, 961 A.2d 538 (Rule 80C permits court to direct that oral argument not be scheduled).

Based on the entire record, the court denies both appeals and grants judgment to Respondents.

*Background*

Petitioner Nicholas Gladu is a prisoner in the custody of the Maine Department of Corrections (DOC). His appeal is from the DOC's denial of two grievances he

1

submitted to prison staff at the Maine Correctional Center (MCC) in 2017, while he was an inmate there. Petitioner's brief summarizes the background as follows:

> Gladu's Petitions allege that while he was incarcerated at Maine Correctional Center in 2017, he submitted two sick call slips to be seen for serious medical concerns and that prison staff failed to provide timely response to his requests for care and treatment (or even respond at all within a reasonable period of time). MDOC policy 18.3 mandates that all prisoner sick call slips be triaged by facility medical staff within 48 hours. Gladu wasn't evaluated by medical staff for his sick call slips until several weeks later.
>
> Gladu first attempted to informally resolve his grievance complaints with the designated staff member. When that staff member failed to timely respond to informal resolution, Glad then submitted his grievance forms to [the] Grievance Review Officer for investigation. When Gladu was finally evaluated by prison medical staff for his sick call complaints, the designated supervisor with jurisdiction was also present and asked Gladu if he would agree to resolve his grievance complaints. Gladu stated, "No, I want my complaints investigated by the GRO.
>
> MDOC policy 29.01 and 29.02 do not require Gladu to accept any proposed informal resolution. Furthermore, nor does MDOC policy permit a supervisor with jurisdiction to respond to a prisoner's attempt at informal resolution several weeks late.
>
> Gladu provided updates of said interaction with the SWJ to the GRO. The GRO then dismissed Gladu's grievances stating that Gladu had failed to make a good-faith effort at informal resolution when he declined to accept the SWJ's proposed untimely resolution.

Petitioner's Brief at 2.

Respondent DOC's summary does not significantly differ from the Petitioner's, but the precise chronology of events is important, for reasons set forth in the *Analysis* section below. The record indicates the following:

- February 24: Petitioner submitted two sick call slips requesting to be evaluated by the prison health care staff.

2

- February 26: Forty eight hours after submitting the sick call slips, Petitioner had not been evaluated by prison health care staff.

- February 27: Petitioner initiated complaints and attempted to contact the Health Services Administrator (HSA) for informal resolution of his complaints.

- March 7: After allegedly getting no response from the HSA, Petitioner filed two grievances with the GRO, alleging two violations of the policy requiring medical staff to see a prisoner within 48 hours of a sick call.

- March 8: The GRO issued notices to Petitioner advising that the grievances had been logged in as of March 7 and that the 30-day period for the GRO to complete his investigation would expire April 7.

- March 10: Petitioner was evaluated by health care staff and also was asked by the HSA to attempt informal resolution of his complaints. Petitioner declined to discuss his complaints with her on the ground that she had failed to meet the timeline for informal resolution, and told her he wanted the GRO to investigate his grievances.

- March 12: Petitioner filed a follow-up Request Slip relating to both grievances with the GRO confirming the March 10 meeting with the HSA and explaining his refusal to discuss informal resolution with the HSA: "Since she was long past the informal resolution timeline, I submitted [the grievances] to you for investigation with indication of my failed attempt at an informal. Wendy [the HSA] wanted to discuss them with me anyway but *I chose not to resolve them*

3

*with her."* Request Slip For Information dated 3/12/2017 (emphasis in original).

- March 14: The GRO responded to Petitioner's Request Slip by writing on it, "I still need to know her response and how it relates to your requested remedy."

- March 14 - April 7: The 30-day period passed with no further attempt at informal resolution.

- April 7: At the end of the 30-day period, the GRO dismissed both of the Petitioner's grievances on the ground that Petitioner failed to comply with the informal resolution procedure required by DOC policy.

*Standard of Review*

The court's review of an action for administrative appeal is "deferential and limited." *Watts v. Bd. of Envtl. Prot.*, 2014 ME 91, ¶ 5, 97 A.3d 115. The court reviews adjudicatory decisions "for abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *Wyman v. Town of Phippsburg*, 2009 ME 77, ¶ 8, 976 A.2d 985. An agency's interpretation of its own enabling statutes and regulations is entitled to some deference, especially to the extent of any ambiguity or room for interpretation. *See Conservation Law Found. v. Dep't of Envtl. Prot.*, 2003 ME at ¶ 23, 823 A.2d 551.

The court will "not vacate an agency's decision unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error

4

of law; or is unsupported by the evidence in the record." *Kroeger v. Department of Environmental Protection*, 2005 ME 50, ¶7, 870 A.2d 566.

The party seeking to vacate the agency's decision bears the burden of persuasion. *Town of Jay v. Androscoggin Energy, LLC*, 2003 ME 64, ¶ 10, 822 A.2d 1114. If the agency's decision was committed to the reasonable discretion of the agency, the party appealing has the burden of demonstrating that the agency abused its discretion in reaching the decision. *See Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567.

*Analysis*

DOC has promulgated a procedure for prisoner complaints and grievances relating to medical and mental health care, codified at 1A C.M.R. 03 201 010-29.02, and hereafter referred to as Policy 29.02. The policy sets a deadline for filing grievances of 15 days from the event giving rise to the grievance, *see* Policy 29.02(VI)(Procedure A)(11).

Policy 29.02 includes a procedure, called Procedure B, that requires the prisoner and the HSA (or that person's designee) to attempt informal resolution before the grievance is filed. The policy also provides that a grievance can be dismissed if the prisoner fails to comply with Procedure B. *See* Policy 29.02(VI)(Procedure C)(2) ("If the Grievance Review Officer determines . . . the prisoner has not complied with the requirements of Procedure B, . . . the Grievance Review Officer shall dismiss the complaint and return the original grievance form to the prisoner, along with a form noting the reason for the dismissal of the complaint.")

The plain purpose of the informal resolution procedure is to require the parties to explore the potential for agreement before a grievance goes through the entire process. The informal resolution procedure is as follows:

**Procedure B:    Informal Resolution**

1.  Unless the prisoner is housed in a jail or another jurisdiction's facility, before filing any grievance form, a prisoner shall make an attempt to resolve the complaint in an informal manner by contacting, as soon as possible and no later than within the first five (5) days of the fifteen (15) day time period, the facility's Health Services Administrator. The prisoner shall provide to the Health Services Administrator, at the time of the contact, the grievance form that the prisoner is proposing to file. The form must meet the requirements of Procedure A, 13 and 14.

2.  The Health Services Administrator shall sign the form and note on it when the prisoner contacted the HSA about the complaint. The Health Services Administrator shall then attempt or shall designate another staff person to attempt, as soon as possible, to informally resolve the complaint, if possible. The Health Services Administrator, or designee, shall determine, in his or her discretion, whether it is appropriate to meet with the prisoner as part of this attempt. Any informal resolution requires the agreement of the Health Services Administrator, or designee, and the prisoner and must be consistent with Departmental policies, procedures, and practices.

3.  If the complaint is resolved, the Health Services Administrator, or designee, shall note on the form what the resolution is, including the implementation date, have the prisoner sign the form acknowledging the resolution of the complaint, and return the original to the prisoner, keeping a copy for the Health Services Administrator's files. If the informal resolution is not implemented by the specified date, the prisoner may file a grievance within fifteen (15) days of the date specified. This grievance shall be handled through the formal grievance process, with no requirement of any further attempt at an informal resolution.

4.  If the complaint is not resolved, the Health Services Administrator, or designee, shall list on the form the actions taken in the attempt to resolve the complaint. The Health Services

6

Administrator, or designee, shall return to the prisoner the original form, with the date of return noted, no later than within five (5) days of the contact, keeping a copy for the Health Services Administrator's files. Neither the Health Services Administrator, nor the Health Services Administrator's designee, may refuse to comply with any requirement of this procedure, for any reason.

5.    If the prisoner has complied with all of the requirements of this procedure, but the complaint is not resolved for any reason, the prisoner must file a grievance form within the original fifteen (15) day time limit in order to utilize the grievance process.

6.    A prisoner housed in a jail or another jurisdiction's facility is not required to comply with the requirements of this procedure.

Policy 29.02(VI)(Procedure B).

In essence, this process requires a prisoner to attempt informal resolution through the Health Services Administrator or a designated person before filing a grievance. The prisoner is required to initiate that contact within five days of the event that gives rise to the prisoner's complaint, and no later than fifteen days.

The Policy provides that, once contact between the prisoner and the designated supervisor is made, the "prisoner shall provide to the [designated supervisor] at the time of the contact, the grievance form that the prisoner is proposing to file". At that point, the designated supervisor is to "attempt, as soon as possible, to informally resolve the complaint, if possible."

The Policy also says that if the contact does not resolve the prisoner's complaint, the designated supervisor "shall list on the form the actions taken in the attempt to resolve the complaint. The Health Services Administrator, or designee, shall return to the prisoner the original form, with the date of return noted, no later

than within five (5) days of the contact, keeping a copy for the Health Services Administrator's files."

The obvious reason why the proposed grievance form is to be provided to the HSA for the date of contact and the action taken to be written on the form is so that, if the grievance is later filed, the Grievance Review Officer can see that the prisoner has complied with Procedure B informal resolution requirement. If the prisoner is unable to make contact with the HSA, the prisoner must go ahead and file the grievance within the 15-day period, in order to preserve the right to pursue the grievance procedure.

Thus, the informal resolution process set forth at paragraphs 1 and 2 of Procedure B is meant to occur within 15 days of the event giving rise to the grievance. After 15 days, the prisoner will no longer be able to provide the HSA with the proposed grievance form because the form will have been filed with the GRO.

In this case, the event giving rise to the grievance was the health care staff's failure to see Petitioner within 48 hours of when he submitted sick call slips on February 24. Therefore, the basis for Petitioner's grievance came into being on February 26 when the 48-hour deadline had passed with him being seen by prison health care staff.

Petitioner filed his grievances March 7. The Petitioner's meeting with the HSA at which he refused to attempt informal resolution occurred March 10—twelve days into the 15-day grievance period.

8

Thus, the issue in this case is, if the HSA responds to a prisoner's attempt to contact the HSA for informal resolution within the 15-day period, but after the prisoner has already gone ahead and filed grievances with the GRO, whether the prisoner is excused from having to attempt informal resolution under Procedure B.

The Petitioner's position appears to be that, once he filed the grievances with GRO, his obligation to participate in informal resolution terminated. But this would mean that a prisoner could bypass informal resolution by initiating contact with the HSA and then filing the grievance with the GRO without giving the HSA a reasonable opportunity to respond to the prisoner. Policy 29.02 does not set a specific deadline by which the HSA has to respond to a prisoner's attempt to pursue informal resolution, but it does contemplate that the response will be before the 15-day deadline by which the prisoner has to file a grievance in order to preserve it.

Here Petitioner filed the grievances on March 7, nine days after February 26, when the basis for the grievances arose. The HSA met with him March 10, twelve days after the basis for the grievance arose and three days before the 15-day deadline. Thus, the HSA's response to Petitioner was not late or untimely. Had Petitioner agreed to attempt informal resolution March 10, his complaints might have been resolved before the 15-day deadline came. The GRO's March 14 reply to the Request Slip made it clear that the GRO expected the Petitioner to explore informal resolution with the HSA and obtain her response to his complaints.

Nothing in Policy 29.02 prohibits a prisoner from filing his grievance well before the 15-day deadline expires. On the other hand, nothing in Policy 29.02 gives

9

a prisoner the right or the ability to bypass the informal resolution process by filing a grievance early. Also, nothing in the Policy says that the obligation for the HSA and the prisoner to attempt informal resolution terminates when the grievance is filed with the Grievance Review Officer.

Thus, based on the unambiguous language of Policy 29.02, the court concludes that the Petitioner was not entitled to refuse to participate in informal resolution on March 10. In other words, the obligation under Procedure B to attempt informal resolution continues after a grievance has been filed with the Grievance Review Officer and it continues until the attempt is made and is either successful or unsuccessful.

Because a failure to comply with Procedure B is grounds for dismissal of a grievance, because Petitioner did fail to comply, and because both of Petitioner's grievances were dismissed on that ground, Petitioner's appeals on both grievances are denied.

IT IS ORDERED:

1. The dismissal of Petitioner's grievances is hereby affirmed.

2. The appeals in these cases are denied.

3. Judgment in both cases is granted to Respondent Maine Department of Corrections and all other named respondents, with such court costs as may be recoverable by law by the prevailing party.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this Order by reference in the docket.

Dated May 17, 2018

A. M. Horton, Justice