STATE OF MAINE
KENNEBEC, SS.

DISTRICT COURT
LOCATION: AUGUSTA
DOCKET NO. AUGDC-AP-2020-1

JONATHAN RUSSELL
    and
PEPPERS GARDEN & GRILL,
       Petitioners

**DECISION AND ORDER**

v.

BUREAU OF ALCOHOLIC
BEVERAGES AND LOTTERY
OPERATIONS
    and
TOWN OF WINTHROP,
       Respondents

Petitioners Jonathan Russell and Peppers Garden & Grill appeal, pursuant to M.R. Civ. P. 80C, a decision of the Bureau of Alcoholic Beverages and Lottery Operations ("Bureau"). The Bureau upheld the Town of Winthrop's ("Town") refusal to renew Peppers Garden & Grill's liquor license because of Russell's "character."

Petitioners are represented by Attorney Brian D. Condon, Jr., the Bureau is represented by Assistant Attorney General Michelle M. Robert, and the Town is represented by Attorney Daniel J. Murphy. In accordance with M.R. Civ. P. 80C(f), the Bureau provided the Court with the complete record of the proceedings under review. Because the Court has determined that this matter can be decided on the briefs, and to avoid further delay, the Court has proceeded without oral argument. *See Lindemann v. Comm'n on Governmental Ethics & Election Practices*, 2008 ME 187, ¶ 26, 961 A.2d 538.

For the reasons stated below, the Court affirms the decision of the Bureau. Two motions filed by Petitioners will be denied as moot.

## BACKGROUND

Petitioner Jonathan Russell ("Petitioner")[1] has been the sole owner of Peppers Garden & Grill, a restaurant in the Town of Winthrop, since May 15, 2007. The restaurant formerly held a Class I on-premise liquor license. On June 28, October 17, and November 12, 2019, Petitioner was arrested for operating under the influence of alcohol. He was also charged with violations of the conditions of his release for the latter two incidents. On November 21 and December 10, 2019, Petitioner pleaded guilty to the charges and was sentenced to incarceration for 28 days, which he had already served. On December 2 and December 16, 2019, the Town held hearings on Petitioner's liquor license renewal application. The Town denied Petitioner's application on December 20, 2019, because Petitioner's arrests had "led the Town Council to lose confidence in [his] ability to fulfill the responsibilities associated with holding a liquor license."

Petitioner timely appealed to the Bureau, which appointed a hearing officer, *see* 28-A M.R.S. § 83-B(2), who held a de novo hearing on January 17, 2020, and issued a decision on March 12, 2020. The Bureau upheld the Town's decision, finding that three OUI arrests within the span of six months, two of which were in violation of conditions of release, were "inconsistent with those character traits of honesty, trust, reliability, discipline, and respect for the law and public safety necessary to be granted the privilege of selling alcohol." The Bureau also found that Petitioner's admission at the hearing that he had been intoxicated at his restaurant "demonstrate[d] a complete disregard of the level of responsibility required for the privilege to

---

[1] Although the restaurant was technically the holder of the license and is a party to this appeal, the rest of this decision will refer to Russell as the primary actor and Petitioner for the sake of readability.

sell alcohol, a regulated product, that among other things is prohibited from being served to intoxicated persons or allowing such persons to remain on the licensed premises."[2]

Petitioner timely appealed the Bureau's decision to the Superior Court, which dismissed the appeal for lack of jurisdiction, and to the District Court. Petitioner did not initially seek a stay of the Bureau's decision. Eventually, on June 23, 2020, he sought a stay from the Bureau, which was denied. Petitioner then moved for a stay from this Court on July 1, and also moved for an expedited hearing on that motion on September 25.

## STANDARD OF REVIEW

Liquor license applications are first considered by the officers of the relevant municipality. 28-A M.R.S. § 653(1). Their decision can be appealed to the Bureau. *Id.* § 653(3). This appeal has been termed a de novo appeal—the Bureau is free to take additional evidence, and it need not rely on the same grounds as the municipality did. *See Ullis v. Boothbay Harbor*, 459 A.2d 153, 157 (Me. 1983). However, the Bureau must uphold the municipality's decision to deny an application unless "it finds by clear and convincing evidence that the decision was without justifiable cause." 28-A M.R.S. § 653(3)(B). The Bureau's decision may then be appealed to the District Court. *Id.* § 653(5); 375 M.R.S. §10051; M.R. Civ. P. 80(C).

In reviewing final agency action, the Court "shall not substitute its judgment for that of the agency on questions of fact." 5 M.R.S. § 11007(3). The Court's review of an action for administrative appeal is "deferential and limited." *Watts v. Bd. of Envtl. Prat.*, 2014 ME 91, ¶ 5, 97 A.3d 115. The party attempting to vacate the agency's decision bears the burden of persuasion. *Town of Jay v. Androscoggin Energy, LLC*, 2003 ME 64, ¶ 10, 822 A.2d 1114. The

---

[2] The hearing officer cited 28-A M.R.S. § 705(3-A) and 18-553 C.M.R. ch. 101, § 8, on this point.

Court may affirm the agency's decision or may "remand the case for further proceedings, findings of fact or conclusions of law or direct the agency to hold such proceedings or take such action as the court deems necessary." 5 M.R.S. § 11007(4)(A, B). The Court may reverse or modify the decision if the agency's findings, inferences, conclusions or decisions violate constitutional or statutory provisions; exceed the agency's statutory authority; arise from unlawful procedure; are affected by bias or error of law; are unsupported by substantial evidence on the whole record; or are arbitrary, capricious or characterized by an abuse of discretion. 5 M.R.S. § 11007(4)(C). "An abuse of discretion may be found where an appellant demonstrates that the decision maker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567.

## STATUTORY PROVISIONS

To be granted a liquor license, an applicant must first meet the eligibility requirements and not be subject to a disqualification. 28-A M.R.S. § 601. Section 653 then lists bases for the municipal officers and the Bureau to deny an application:

> **2. Findings.** In granting or denying an application, the municipal officers or the county commissioners shall indicate the reasons for their decision and provide a copy to the applicant. A license may be denied on one or more of the following grounds:
> **A.** Conviction of the applicant of any Class A, Class B or Class C crime;
> **B.** Noncompliance of the licensed premises or its use with any local zoning ordinance or other land use ordinance not directly related to liquor control;
> **C.** Conditions of record such as waste disposal violations, health or safety violations or repeated parking or traffic violations on or in the vicinity of the licensed premises and caused by persons patronizing or employed by the licensed premises or other such conditions caused by persons patronizing or employed by the licensed premises that unreasonably disturb, interfere with or affect the ability of persons or businesses residing or located in the vicinity of the licensed premises to use their property in a reasonable manner;
> **D.** Repeated incidents of record of breaches of the peace, disorderly conduct, vandalism or other violations of law on or in the vicinity of the licensed premises and caused by persons patronizing or employed by the licensed premises;

**D-1.** Failure to obtain, or comply with the provisions of, a permit for music, dancing or entertainment required by a municipality or, in the case of an unincorporated place, the county commissioners;

**E.** A violation of any provision of this Title;

**F.** A determination by the municipal officers or county commissioners that the purpose of the application is to circumvent the provisions of section 601; and

**G.** After September 1, 2010, server training, in a program certified by the bureau and required by local ordinance, has not been completed by individuals who serve alcoholic beverages.

*Id.* § 653(2).

Section 654 further provides:

**1. Character; Location; Operation of Business.** In issuing or renewing licenses, the bureau, the municipal officers or the county commissioners, as the case may be, shall give consideration to:

**A.** The character of any applicant;

**B.** The location of the place of business;

**C.** The manner in which the business has been operated; and

**D.** Whether the operation has endangered the safety of persons in or on areas surrounding the place of business.

*Id.* § 654(1).

## DISCUSSION

Petitioner's OUI convictions were all Class D crimes and therefore were not a basis for denial under section 653(2)(A). Petitioner argues that the Bureau instead relied entirely on section 654. For the purposes of this discussion, the Court will assume that this was the case.[3] See *Palian v. HHS*, 2020 ME 131, ¶¶ 41-43, ___A.3d___ (summarizing rule that courts must rely on the grounds clearly stated by an agency).

Petitioner contends that the separation of sections 653 and 654 means they serve different functions. By this interpretation, section 653 enumerates the sole grounds on which a license can be denied. Section 654 then lays out "plus factors" for the Bureau to consider. The Bureau must

---

[3] The hearing officer's introduction to his legal analysis rested entirely on the "character" prong of section 654. However, he also discussed potential violations of law, *supra* note 2, which could bear on sections 654(1)(C), 654(1)(D), 653(2)(D), or 653(2)(E).

therefore apply a two-part test: to deny a license, it must first find that at least one item from section 653 applies, and then it must consider the items in section 654 to decide whether, in its discretion, it should nevertheless grant the license.

The Bureau argues that the sections both offer criteria for the Bureau to apply to ensure it is not making arbitrary decisions—it may deny a license if an applicant meets any of the criteria in section 653 *or* if the factors in section 654 weigh against approval.

The Court finds that the statute is ambiguous, because "it is reasonably susceptible of multiple interpretations." *Competitive Energy Servs. v. PUC*, 2003 ME 12, ¶ 15, 818 A.2d 1039 (quoting *Guilford Transp. Indus. v. PUC*, 2000 ME 31, P11, 746 A.2d 910, 914). The Court must defer to the agency's interpretation of an ambiguous statute it is charged with administering if the interpretation is reasonable. *See Allied Res., Inc. v. Dep't of Pub. Safety*, 2010 ME 64, ¶¶ 21-22, 999 A.2d 940. Because the ultimate goal of statutory interpretation is to determine the intent of the Legislature, in considering the reasonableness of the Bureau's interpretation, the Court will examine the highlights of what is a rather extensive history of the liquor licensing law. *See id.*

Decades ago, liquor licenses were subject to the "approval" of municipal officers. R.S. ch. 57, §§ 22, 28, 40 (1944). The statute did not specify what standards the municipal officers should use. *See Ullis*, 459 A.2d at 158. Even when the municipal officers refused to approve the application, the State Liquor Commission[4] could nevertheless issue a license "if it finds the refusal arbitrary or without justifiable cause." R.S. ch. 57, §§ 28, 40 (1944). The statute laid out several mandatory grounds for non-issuance, at least for malt liquor licenses: age, lack of

---

[4] The Commission is equivalent, for these purposes, to the Bureau. *See* L.D. 1572 (118th Legis. 1997) (updating code to reflect transfer of licensing responsibilities to the Bureau).

violative of Petitioner's due process or equal protection rights, especially given that the hearing officer specifically enumerated the character traits he was relying upon and detailed the elements of Petitioner's behavior that distinguished his case from that of someone arrested for OUI on a single occasion.

Petitioner now objects to the hearing officer's use of police reports concerning his arrests. Although Petitioner objected to the testimony of the Town's police chief on hearsay grounds, at the end of the hearing, the hearing officer left the record open to allow the Town to submit the reports. Petitioner's counsel was expressly asked by the Bureau's counsel whether he objected, and he repeatedly indicated that he did not and stated: "I know what they say." Counsel also filed no objections after the hearing officer provided notice that the reports had been received. The reports were, in any event, admissible as "the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." 18 M.R.S. § 9057.

Petitioner also makes much of the fact that the Town based its decision on his arrests, while the Bureau also considered his convictions. This was no error, because the Bureau was not required to base its decision on the same grounds as the Town. *See Ullis*, 459 A.2d at 157. What matters is that the *fact* of Petitioner's convictions existed at the time of the Town's decision. *See Oronoka*, 532 A.2d at 1045.

Alcoholism's status as a disease does not make it inappropriate for the Bureau to rely on Petitioner's alcohol-related behavior as evidence of character, particularly given that Petitioner did not establish that he had been diagnosed with an alcohol use disorder, let alone that such a disorder compelled his behavior. The Bureau found that at the time of the hearing Petitioner had not engaged in alcohol-abuse counseling.[7] To the extent that Petitioner has now engaged in

---

[7] A point not argued by Petitioner is that the Bureau likely erred in considering Petitioner's failure to obtain treatment at the time of the January hearing, rather than only considering the facts as they existed when the Town

treatment, that would be relevant evidence of character for a *future* license application. *See* 28-A M.R.S. § 2(G) (permitting reapplications six months after denial by Bureau).

Finally, the Court regrets that it was unable to address Petitioner's motions as speedily as it would have under ordinary conditions. *See* State of Maine Judicial Branch COVID-19 Phased Management Plan (last amended November 3, 2020). Nevertheless, the Court would have denied the motions. It is unclear whether there was any remaining action from the Bureau that the Court could have stayed, because Petitioner's temporary license, active during the pendency of his appeal to the Bureau, *see* 5 M.R.S. § 10002, had already expired months earlier; the Court would effectively have had to order the Bureau to grant Petitioner a new temporary license.

In any event, the Court would not have granted a stay, because even if it had found "a strong likelihood of success on the merits," under the circumstances of the case, it could not have found "no substantial harm to adverse parties or the general public" and "a showing of irreparable injury" to Petitioner. *See* 5 M.R.S. § 4; *see also Carriage House of Livermore v. Bureau of Alcohol and Lottery Operations*, No. CV-15-179 (Me. Dist. Ct., Lewiston, Jul. 30, 2015) (denying stay even when motion had been filed before temporary license expired).

## CONCLUSION

For these reasons, the decision of the Bureau is **affirmed**. Petitioners' motions for a stay and for an expedited hearing on that motion are **denied as moot**.

DATED: December **16**, 2020.

Brent Davis
Judge, Maine District Court

---

held its hearing. *See Oronoka*, 532 A.2d at 1045. This error is of little significance in the overall context of the decision, however, and was ultimately invited by Petitioner's counsel when he asked Petitioner at the hearing to confirm that he was *seeking* treatment.

Entered on the Docket: 12/16/20

Date Filed:4/21/20

Docket No.AP-20-01   12/16/20

DIST. Ct - SUP

Action: Appeal

Jonathan Russell & Peppers
Garden and Grill                    vs                    Town of Winthrop and
                                                                  State of Maine

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Brian Condon, Esq.<br>PO Box 169<br>Winthrop, Maine 04364 | Daniel Murphy, Esq.<br>Bernstein Shur<br>100 Middle Street, PO Box 9729<br>Portland, ME 04104-5029 |

Date of Entry

| | |
|---|---|
| 4/21/20 | Petition for Review of Final Agency Action, filed. s/Condon, Esq. |
| 4/24/20 | Letter and Entry of Appearance filed by Daniel Murphy, Esq. for Defendant |
| 4/27/20 | Letter filed by defendant noted dismissal of appeal through superior court |
| 5/26/20 | Certified Administrative Record of Defendant filed by Lawrence Sanborn, Division Manager, liquor Licensing & Enforcement |
| 6/3/20 | Notice and Briefing Schedule issued and mailed to parties |
| 7/1/20 | Motion for a Stay of the Final Agency Action |
| 7/10/20 | Defendant Bureau of Alcoholic Beverages and Lottery Operations' Response to the petitioner's Motion for Stay filed 7/10/20. |
| 8/13/20 | Petitioner's Brief, filed. s/Condon, Esq. |
| 9/3/20 | The Bureau's Response to Petitioner's Rule 80C Brief, filed. s/Robert, AAG. |
| 9/10/20 | Response of the Town of Winthrop to Petitioner's Brief, filed. s/Murphy, Esq. |
| 9/25/20 | Motion for Expedited Hearing on Petitioner's Application for a Stay of Final Agency Action, filed. s/Condon, Esq.<br>Affidavit in Support of, filed. s/Russell. |
| 10/15/20 | Bureau's Response to Motion for Expedited Hearing on its Motion for Stay, filed. s/Robert, AAG. (attached exhibits) |
| 10/22/20 | Response of the Town of Winthrop to Petitioner's Motion for Expedited Hearing on it's Motion for Stay |
| 10/28/20 | File Location - given to Law Clerk by Judge Davis |